UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUITY HAMZEH,<br><br>    Plaintiff,<br><br>    v.<br><br>PHARMAVITE LLC, et al.,<br><br>    Defendants. | Case No. 24-cv-00472-HSG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFF'S COMPLAINT**<br><br>Re: Dkt. No. 46 |

Pending before the Court is Defendants Pharmavite LLC and Nature Made Nutritional Products' (collectively, "Pharmavite") motion to dismiss and strike Plaintiff Guity Hamzeh's amended complaint, Dkt. No. 42 ("Compl."). The Court finds this matter appropriate for disposition without oral argument and deems the matter submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court denies the motion.

## I. BACKGROUND

On April 29, 2024, Plaintiff filed the operative amended class action complaint. Plaintiff alleges that Pharmavite misled consumers by deceptively labeling several Nature Made fish oil capsule products with the phrase "[h]elps support a healthy heart." Compl. at 3. Plaintiff alleges that consumers purchased these capsules because they believed in the capsules' heart health benefits. But according to Plaintiff, "[o]verwhelming evidence demonstrates that fish oil capsules do not promote a healthy heart," making the capsules' labeling "false and misleading" to reasonable consumers. *Id.* at 3, 8.

Plaintiff seeks certification of a nationwide class comprised of "all persons who, within the applicable statute of limitations period, purchased one or more Nature Made Fish Oil Capsules,"

as well as two subclasses made up of consumers from various states.[1]  Compl. at 11.  Based on Pharmavite's allegedly deceptive labeling, Plaintiff brings one cause of action on behalf of herself and the Consumer Protection Subclass, alleging that Pharmavite's practices violate consumer protection statues in California, Connecticut, Illinois, Maryland, Missouri, and New York.  *Id.* at 12.  Plaintiff brings four causes of action on behalf of herself and the California Subclass for alleged violations of (1) California's False Advertising Law ("FAL"), Cal. Bus & Prof. Code § 17500, (2) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, and (3) California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200, in addition to a common law claim for intentional misrepresentation.  Plaintiff also brings three common law claims on behalf of herself and the nationwide class for breach of express warranty, quasi-contract, and negligent misrepresentation.

Pharmavite moves to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Dkt. No. 46 ("Mot.").  Pharmavite also seeks an order under Federal Rule of Civil Procedure 12(f) striking portions of Plaintiff's complaint.  The motion is now fully briefed.  *See* Dkt. Nos. 50 ("Opp."), 51 ("Reply").

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  To meet her burden of establishing standing, a plaintiff must show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by

---

[1] Plaintiff seeks to certify a "Consumer Protection Subclass" comprised of "all persons who, while in the states of California, Connecticut, Illinois, Maryland, Missouri or New York, and within the applicable statute of limitations period, purchased one or more Nature Made Fish Oil Capsules." Plaintiff also seeks to certify a "California Subclass," defined as "all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Nature Made Fish Oil Capsules."  Compl. at 11.

a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). And where a plaintiff seeks injunctive relief, she must also demonstrate a "real and immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation and quotations omitted). If a plaintiff fails to establish standing or any other aspect of subject matter jurisdiction, "the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (citation and quotations omitted), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77, 130 (2010).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citation and quotations omitted). When fraud is an essential element of a claim, Rule 9(b) imposes a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.");

1  *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must
2  identify "the who, what, when, where, and how" of the alleged conduct to provide defendants with
3  sufficient information to defend against the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.
4  1997) (citation and quotations omitted).  However, "[m]alice, intent, knowledge, and other
5  conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. Rule 9(b).  Even if the
6  court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend
7  even if no request to amend the pleading was made, unless it determines that the pleading could
8  not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th
9  Cir. 2000) (en banc) (internal citation and quotations omitted).

### C. Rule 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Z.A. ex rel. K.A. v. St. Helena Unified Sch. Dist.*, No. C 09-03557 JSW, 2010 WL 370333, at *2 (N.D. Cal. Jan. 25, 2010). "Where there is any doubt as to the relevance of the challenged allegations, courts generally err on the side permitting the allegations to stand." *See id.* (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 534 (1994)). This is particularly true when the moving party shows no prejudice and when striking the allegations will not streamline the ultimate resolution of the action. *Id.*

## III. MOTION TO DISMISS

### A. Article III Standing

As a threshold matter, Pharmavite claims that Plaintiff has not "alleged sufficient facts to confer standing to assert claims on behalf of a nationwide or multi-state class." Mot. at 18. Specifically, Pharmavite asserts that Plaintiff, who is a resident of California and who only purchased Defendants' fish oil capsules in California, lacks standing to bring consumer protection claims under Connecticut, Illinois, Maryland, Missouri, and New York laws. *Id.* at 19. Pharmavite also contends that Plaintiff lacks standing to assert common law claims on behalf of a

nationwide class "under the laws of states in which she does not reside and with which she has no other connection." *Id*. According to Plaintiff, under *Melendres v. Arpaio*, the Court's standing analysis should follow the "class certification approach." Under this approach, "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing." 784 F.3d 1254, 1262 (9th Cir. 2015). As set forth in *Melendres*, "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Id*. Plaintiff therefore asks the Court to address Pharmavite's arguments regarding Plaintiff's ability to represent the proposed classes at class certification rather than at the pleading stage. Opp. at 7–9.

Until the Ninth Circuit's ruling in *Melendres*, there was "no controlling case law on this issue," and the "Ninth Circuit recognized this question was an open one, expressly declining to reach the 'difficult chicken-and-egg question of whether class certification should be decided before standing.'" *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1068–69 (N.D. Cal. 2015) (quoting *Perez v. Nidek Co., Ltd.,* 711 F.3d 1109 (9th Cir. 2013)). Since the *Melendres* decision in 2015, "[c]ourts in the Ninth Circuit have been split on whether a named plaintiff in a putative class action has standing to assert claims under the laws of states where the named plaintiff does not reside or was injured." *Sultanis v. Champion Petfoods USA Inc.*, No. 21-CV-00162-EMC, 2021 WL 3373934, at *5 (N.D. Cal. Aug. 3, 2021). Many courts have ruled that a plaintiff in a putative class action only has standing to assert claims under the laws of states where the plaintiff resides or was injured. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) (collecting cases); *Sultanis*, 2021 WL 3373934, at *5 (collecting cases); *Rivera v. Invitation Homes, Inc.*, No. 18-CV-03158-JSW, 2019 WL 11863726, at *4 (N.D. Cal. June 19, 2019) (collecting cases). But a "growing minority of courts" in the Ninth Circuit have held that this matter "is not a standing question that needs to be decided at the motion to dismiss stage." *Sultanis*, 2021 WL 3373934, at *5. As some of those courts have reasoned, "whether a named plaintiff can represent class members whose claims arise under the laws of different states does

5

1  not appear to be a question of standing [because] [Plaintiff] does not [her]self seek to raise a claim
2  under the laws of a different state; rather, [s]he seeks to represent a class member who can raise
3  such a claim." *Patterson v. RW Direct, Inc.*, No. 18-CV-00055-VC, 2018 WL 6106379, at *1
4  (N.D. Cal. Nov. 21, 2018). Those courts, finding that the plaintiff "established . . . the 'necessary
5  stake' in litigating the class's claims for purposes of standing," have opted to address the matter at
6  class certification. *Id.* (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011); *see also Sultanis*,
7  2021 WL 3373934, at *5 (collecting cases).

8        Ultimately, whether class certification should be decided before or after standing in such
9  consumer class actions is "left to the district court's discretion." *Effinger v. Ancient Organics*
10 *LLC*, 657 F. Supp. 3d 1290, 1300 (N.D. Cal. 2023); *see Rivera*, 2019 WL 11863726, at *4
11 ("*Melendres* does not displace the Court's discretion to evaluate standing at the pleading stage.");
12 *Phan v. Sargento Foods, Inc.*, No. 20-CV-09251-EMC, 2021 WL 2224260, at *12 (N.D. Cal. June
13 2, 2021) ("*Melendres* does not 'impose a per se rule'; rather, 'district courts retain discretion to
14 address standing before or after class certification in the 'sister state' law scenario.'" (internal
15 citation omitted)). To date, this Court has dismissed for lack of standing at the motion to dismiss
16 stage instead of deferring its analysis to class certification. *See Sponchiado v. Apple Inc.*, No. 18-
17 CV-07533-HSG, 2019 WL 6117482, at *7 (N.D. Cal. Nov. 18, 2019); *Snarr v. Cento Fine Foods*
18 *Inc.*, No. 19-CV-02627-HSG, 2019 WL 7050149, at *8 (N.D. Cal. Dec. 23, 2019). However, after
19 further consideration based on the development of the case law, the Court is no longer persuaded
20 that this issue—whether a non-resident plaintiff who purchased the challenged product in her
21 resident state can bring claims on behalf of consumers residing in different states under the laws of
22 those states—is a matter of Article III standing. Instead, the Court finds Judge Chhabria's
23 reasoning in *Patterson v. RW Direct, Inc.* to be persuasive.

24       Accordingly, the Court declines to dismiss Plaintiff's claims on behalf of the nationwide
25 class and subclasses for lack of standing. Plaintiff and the proposed class members each suffered
26 the same alleged injury—purchasing one or more Nature Made fish oil capsule products.
27 Pharmavite does not challenge Plaintiff's standing under California law. Nor does Pharmavite set
28 forth any argument that Plaintiff's claims in California "implicate a significantly different set of

concerns than the unnamed plaintiffs' claims." *Melendres*, 784 F.3d at 1263; *see McKinney v. Corsair Gaming, Inc.*, No. 22-CV-00312-CRB, 2022 WL 2820097, at *13 (N.D. Cal. July 19, 2022) ("[Defendant] has not provided a sufficient description of other state laws to meet its burden of showing that Plaintiffs lack standing to bring claims under these other states' laws."); *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1134 (N.D. Cal. 2023) (finding that defendant, who made a "meager showing about other states' laws," did not establish that other states' consumer protection regimes would leave plaintiff unable to represent consumers in those states). Under these circumstances, where Plaintiff's standing in California is uncontested and where Plaintiff seeks to represent a broader class of similarly affected consumers who may be able to raise claims under other, as yet undifferentiated state laws, the Court declines to dismiss for lack of standing. *See Melendres*, 784 F.3d at 1262 (9th Cir. 2015) ("[W]hether the named plaintiffs are adequate representatives of the claims of the unnamed plaintiffs . . . [is] not a question of standing.").

That said, this doctrinally-driven outcome leads to significant case management concerns, which the Court exercises its discretion to address. First, allowing the case to proceed in its current form could subject Defendants to needlessly broad discovery. The Court will not permit the scope of discovery in this matter to exceed what is realistically warranted. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK, 2016 WL 3029783, at *5 (N.D. Cal. May 27, 2016) (noting that, in exercising discretion, a court should consider the cost and burden of discovery). Second, neither party has addressed potential differences in the state consumer protection statutes at issue here or the potential choice of law issues relevant to Plaintiff's proposed representation of consumers under other state laws. *See In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 144 (D.D.C. 2016) ("Whether the named plaintiffs can adequately represent unnamed class members with claims under other states' laws depends on how variable the laws are . . . . Since the parties have not yet presented a complete analysis of variability among state laws, the Court cannot determine at this stage whether the named plaintiffs can adequately represent the entire class."). The Court thus DENIES the motion on this ground for now, but invites Pharmavite to file a renewed motion to dismiss limited to this issue (without relitigating the

1  standing question the Court has now decided), as explained at the conclusion of this order.[2]

**B. Preemption**

Pharmavite argues that Plaintiff's common law claims and Plaintiff's claims brought under state consumer protection statutes are expressly preempted by the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–399 ("FDCA"), as amended in 1990 by the Nutrition Labeling and Education Act, 21 U.S.C. § 343 ("NLEA").

*i.    FDCA Statutory and Regulatory Framework*

"The FDCA requires manufacturers of dietary supplements to ensure that the labels on their products are not 'false or misleading in any particular.'" *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 809 (9th Cir. 2020) (quoting 21 U.S.C. § 343(a)). The FDCA applies different regulatory standards to different types of supplement claims, including "disease claims" and "structure/function claims." *Greenberg v. Target Corp.*, 985 F.3d 650, 654–55 (9th Cir. 2021). A "disease claim" generally refers "to a statement that the product itself can cure or treat a disease." *Id.* Conversely, a "structure/function" claim, defined at 21 C.F.R. § 101.93(f), simply "describes the function or role of an ingredient or nutrient on the human body . . . . not the product's impact on a person's health." *Id*. Section 403(a)(1) of the FDCA "subjects all food claims, including structure/function claims on dietary supplements, to the 'truthful and non-misleading' standard." *Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body*, 65 FR 1000-01; *see* 21 C.F.R. § 1.21(a)(2) (stating that a food label "shall be deemed to be misleading if it fails to reveal facts" that are "[m]aterial with respect to consequences which may result from use of the article under [ ] the conditions prescribed in such labeling [or] such conditions of use as are customary or usual"). Plaintiffs in a false advertising action under California law are entitled to challenge a claim as false or misleading. *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App.

---

[2] On the face of the complaint, Plaintiff appears to bring her first cause of action on behalf of herself and the Multi-State Consumer Protection Subclass. Compl. at 12. It is not clear how Plaintiff, who is a California resident and who purchased the product in California, has *individual* claims under the laws of Connecticut, Illinois, Maryland, Missouri, and New York. The parties have not substantively addressed this issue in their briefing. Plaintiff should clarify the scope of her claims or Pharmavite may offer legal arguments as to why these claims should not proceed.

4th 1336, 1344 (2003).

      *ii.*      *FDCA Express Preemption*

The FDCA "includes a preemption provision that establishes a national and uniform standard for certain labeling statements" such that "state laws imposing labeling requirements not identical to FDA mandates are preempted." *Greenberg*, 985 F.3d at 655; *Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 1056480, at *4 (N.D. Cal. Mar. 10, 2015). Here, Plaintiff alleges that Pharmavite's structure/function claim "[h]elps support a healthy heart," which appears on several Nature Made fish oil capsule products, is false and misleading. Compl. at 5, 8. For preemption to apply, "the plaintiff's legal claims and factual allegations" must "hold a defendant to a different . . . standard than the FDCA." *Kroessler*, 977 F.3d at 813. *See Gallagher*, 2015 WL 1056480, at *4 ("[P]reemption only occurs where application of state laws would impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA."); 21 U.S.C. § 343-1(a)(5). The parties dispute whether Plaintiff's claims that the products' label is false and misleading are preempted by the FDCA. Specifically, Pharmavite contends that Plaintiff (1) impermissibly challenges a structure/function claim based on disease studies and (2) impermissibly distinguishes between two forms of nutritional intake—whole foods and dietary supplement capsules.

      *iii.*      *Plaintiff Plausibly Alleges That Pharmavite's Label is False*

Pharmavite first argues that Plaintiff's allegations, which rest on two peer-reviewed studies, are insufficiently supported because "studies of *disease* . . . cannot be used to prove the falsity of a structure/function claim." Mot. at 23.[3] This resembles the successful argument made by the defendant in *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 849 (9th Cir. 2019). In that case, plaintiff "cit[ed] studies showing that the supplement did not prevent heart *disease*" to challenge a supplement label promoting heart *health*. *Kroessler*, 977 F.3d at 812 (citing *Dachauer*, 913 F.3d at 848). The Ninth Circuit in *Dachauer* held that the FDCA expressly preempted plaintiff's

---

[3] According to Defendants, Plaintiff has not pled any scientific evidence establishing that fish oil "do[es] not help *support* a *healthy* heart, without reference to its effect on an unhealthy (or diseased) heart, and without reference to its ability to prevent heart *disease*." Mot. at 22 (italics in original).

9

1  claims because plaintiff sought to "impose a requirement under California law that
2  structure/function claims—at least those related to . . . heart health . . . require proof that the
3  supplement treats or prevents cardiovascular disease." *Dachauer*, 913 F.3d at 848.  Here,
4  however, Plaintiff cites scientific studies, which as alleged contain non-disease specific findings,
5  to allege that fish oil "does not promote heart health."  *See* Compl. at 4–5 ("[There is] no evidence
6  that [fish oil] capsules improve cardiovascular health . . . there is no proof fish oil capsules
7  improve your heart health.").  Taken as true, these allegations support Plaintiff's claims that
8  Pharmavite violated state law.  And since Plaintiff "'matched' h[er] evidence with [Pharmavite's]
9  structure/function claims," *Dachauer* is distinguishable.  *Kroessler,* 977 F.3d at 813.  *See*
10 *Gallagher*, 2015 WL 1056480, at *7 ("Not preempted would be a claim that 'supports heart
11 health' as a structure/function claim is a false and misleading statement contrary to scientific
12 studies.").
13         Pharmavite argues that the titles of these studies and the findings within them are disease-
14 specific.  Mot. at 23.  While the cited studies do focus on specific heart diseases, they "include
15 information that has some relevance to overall heart health," and they "provide some direct
16 evidence of the falsity of the 'supports heart health' claim."  *Gallagher v. Bayer AG*, No. 14-CV-
17 04601-WHO, 2015 WL 4932292, at *5 (N.D. Cal. Aug. 18, 2015).  Plaintiff's complaint, for
18 instance, references a generalized finding that there is "no evidence that [fish oil] capsules
19 improve cardiovascular health."  Compl. at 4–5.  Therefore, while these studies do discuss
20 diseases, "they make it not only 'possible,' but 'plausible' that the [supplements] do not improve
21 heart health more generally."  *Gallagher*, 2015 WL 4932292, at *5.  Pharmavite's argument that
22 the studies provide "no support for [Plaintiff's] allegations that fish oil and omega- 3s do not help
23 support a healthy heart" imposes a more demanding pleading standard than is warranted under
24 Rule 12(b)(6).  Pharmavite's contentions that Plaintiff's cited studies have no bearing on the
25 relationship between overall heart health and fish oil consumption may later prove persuasive as a
26 factual matter, but at the motion to dismiss stage, the complaint plausibly alleges that
27 Pharmavite's "[h]elps support a healthy heart" statement is false.
28         //

          *iv.*      *Pharmavite's Consumption Distinction is Meritless*

Pharmavite next argues that Plaintiff's claims are preempted because Plaintiff challenges the supposed heart health benefits of fish oil capsules while conceding that "eating fish promotes [a] healthy heart." Compl. at 3; Mot. at 25. According to Pharmavite, the FDCA expressly preempts challenges to a structure/function claim that are predicated on the manner—whether organically in food or in capsule form—that an individual consumes the relevant nutrient. Mot. at 27. This argument is meritless. As Plaintiff succinctly notes, "[a]greement that eating fish supports a healthy heart is *not* agreement that fish oil alone supports a healthy heart." Opp. at 17. Plaintiff challenges Defendants' claims about fish oil capsules' heart benefits as displayed on the relevant products. Plaintiff does not challenge any representations about fish consumption, and she does not rely on factual allegations regarding fish consumption to substantiate her claims. At some point, Pharmavite may attempt to establish that the heart benefits of fish consumption writ large substantiate its structure/function claim. That claim, however, is not properly before the Court at this stage.

Accordingly, the Court declines to dismiss Plaintiff's claims on preemption grounds.

**C. Substantiation**

Pharmavite argues that Plaintiff's claims should be dismissed because they constitute lack of substantiation claims, rather than claims that Pharmavite's labeling is false or misleading. Mot. at 27. The "FDCA requires manufacturers to have substantiation for their structure/function claims," but "California law prohibits private plaintiffs from demanding that advertisers substantiate their claims." *Kroessler*, 977 F.3d at 810. Instead, private plaintiffs may bring false advertising or labeling actions, where they bear "the burden of producing evidence that the challenged advertising claim is false or misleading." *Nat'l Council Against Health Fraud, Inc.*, 107 Cal. App. 4th at 1344. Nevertheless, "just because California law prohibits private plaintiffs from forcing defendants to substantiate their advertising claims . . . does not mean California law prohibits those plaintiffs from attacking defendants' substantiation." *Kroessler*, 977 F.3d at 811.

Here, Pharmavite argues that Plaintiff brings an impermissible substantiation challenge. *See* Mot. at 28 ("Plaintiff appears to allege that there is a lack of scientific evidence showing that

11

omega-3s help support a healthy heart, rather than alleging that there is scientific *evidence* that *refutes* the claim that omega-3s help support a healthy heart."). The plain language of Plaintiff's complaint undercuts this argument. Plaintiff does not assert that Pharmavite's label lacks sufficient scientific support: rather, she alleges that Pharmavite's label claim is entirely false such that it misleads consumers. *See* Compl. at 8 ("Nature Made's affirmative representations are misleading to reasonable consumers."). Plaintiff, for instance, cites one study finding that fish oil capsules "may . . . harm" heart health and presents scientific findings that fish oil capsules have *no* heart health benefits. Compl. at 4-5. Moreover, the Ninth Circuit is clear: a plaintiff may "challenge a defendant-advertiser's purported substantiation." *Kroessler*, 977 F.3d at 811. Plaintiff's complaint clearly challenges the alleged falsity of Pharmavite's label. That challenge may also, necessarily, implicate Pharmative's obligation to substantiate its label claims. Under these circumstances, such an implication—whether explicit or implicit—does not warrant dismissal.

## IV.     MOTION TO STRIKE

Pharmavite asks the Court to strike several allegations in the operative complaint, including Plaintiff's references to "unidentified products" and references to product representations not specifically challenged in this litigation. Mot. at 30. As a preliminary matter, Pharmavite's request to strike allegations regarding the scientific basis of Plaintiff's claims is misplaced. These allegations, which Defendants repeatedly attacked in their motion to dismiss, are central to this litigation. They are not the type of "redundant, immaterial, impertinent, or scandalous matter" appropriate for dismissal via a motion to strike. *See* Fed. R . Civ. P. 12(f). As for the so-called "unidentified products" referenced in Paragraphs 5, 8, and 19 of Plaintiff's complaint, the Court agrees with Plaintiff that these products could be relevant to the litigation. *See Khasin v. Hershey Co.*, No. 5:12-CV-01862 EJD, 2012 WL 5471153, at *9 (N.D. Cal. Nov. 9, 2012) ("A motion to strike should be denied if there is any doubt whether the allegations in the pleadings might be relevant in the action."). Moreover, the parties' "concerns about the differences [between] products are better addressed at the class certification stage." *Id. See Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013)

("Where the allegations indicate sufficient similarity between the products, any concerns regarding material differences in the products can be addressed at the class certification stage."). Finally, the Court declines to strike Plaintiff's references to variations on the challenged "helps support a healthy heart" label claim. These representations are "sufficiently similar" to the challenged label, and any concerns regarding the precise label claim at issue are best suited for class certification. *See Kosta*, 2013 WL 2147413, at *15. Accordingly, the Court denies Pharmavite's motion to strike.

## V. CONCLUSION

The Court **DENIES** the motion to dismiss and to strike, Dkt. No. 46.

The Court **DIRECTS** the parties to meet and confer to determine whether they can reach an agreement regarding the scope of the putative class claims that Plaintiff intends to pursue. The parties should discuss whether they can agree to an amendment adding additional named plaintiffs from the other states referenced in the complaint or, alternatively, whether Plaintiff will narrow the scope of the complaint to claims arising under California law.

After the parties meet and confer, and subject to those discussions, the Court **INVITES** Defendants to bring a renewed motion to dismiss, limited to the state law and choice of law issues specified above (specifically whether, as pled, Plaintiff can satisfy the typicality, adequacy, and commonality requirements of Rule 23 as to all six states' laws as asserted in the complaint). *See Sultanis*, 2021 WL 3373934, at *6–8. Any renewed motion to dismiss is due on March 18, 2025. Any opposition brief is due on April 1, 2025. Any reply brief is due on April 8, 2025.

The Court **SETS** a case management conference on March 18, 2025 at 2:00 PM. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The parties are further **DIRECTED** to file a joint case management statement by March 11, 2025.

//

**IT IS SO ORDERED.**

Dated: 2/26/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge