UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUITY HAMZEH,<br><br>Plaintiff,<br><br>v.<br><br>PHARMAVITE LLC, et al.,<br><br>Defendants. | Case No. 24-cv-00472-HSG   (PHK)<br><br>**ORDER RESOLVING DISPUTE RE: PROTECTIVE ORDER [DKTS. 103, 114, 115, AND 116]; ORDER DENYING WITHOUT PREJUDICE DISCOVERY LETTER BRIEF OF MAY 4, 2026 [DKT. 118]**<br><br>Re: Dkts. 103, 114, 115, 116, and 118 |

This case has been referred to the undersigned for all discovery purposes. *See* Dkt. 105. Now before the Court is a joint letter brief and follow-up briefing regarding a dispute between the Plaintiff Guity Hamzeh ("Plaintiff") and Defendant Pharmavite LLC ("Pharmavite") concerning the appropriate Protective Order for this case. [Dkts. 103, 114].

After reviewing the Parties' initial discovery letter brief [Dkt. 103], the Court directed the Parties to fully comply with the undersigned's Discovery Standing Order and to meet and confer pursuant to the provisions therein. [Dkt. 108]. The Parties filed a further joint letter brief indicating that, after further meet and confer, the Parties were incapable of narrowing this dispute. [Dkt. 114]. Without leave of Court, the Parties filed two additional, individual letter briefs after filing the further joint letter brief. [Dkts. 115, 116].

On May 4, 2026, the Parties filed a separate Joint Discovery Letter Brief which raises disputes regarding Defendant's production of documents. [Dkt. 118]. In this most recent Discovery Letter Brief, the Parties raise arguments about the Protective Order which are resolved by the instant Order. *Id.*

The Court finds these disputes suitable for resolution without oral argument. *See* Civil L.R.

7-1(b).

## LEGAL STANDARD

The generally applicable legal standards for discovery are well-known. The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery").

"It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999). However, Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

"While courts generally make a finding of good cause before issuing a protective order, a court need not do so where (as here) the parties stipulate to such an order." *In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011). The Ninth Circuit has recognized that district courts have "broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). Courts have recognized that, absent the entry of a protective order, the public disclosure of information such as financial information, customer names, employee lists, business proposals, and business pitches may result in competitive harm. *See Bayside Sols., Inc. v. Avila*, No. 21-cv-08738-PJH, 2022 WL 3215010, at *2 (N.D. Cal. Aug. 9, 2022) (citing *In re Elec. Arts*, 298 F. App'x 568, 569 (9th Cir. 2008); *In re Google Location History*

United States District Court
Northern District of California

2

*Litig.*, 514 F. Supp. 3d 1147, 1162 (N.D. Cal. 2021)). The scope of a district court's discretion in discovery matters includes the "decision to grant, lift or modify a protective order[.]" *Roman Cath. Archbishop*, 661 F.3d at 423.

## DISCUSSION

In the instant joint letter briefs, the Parties ask the Court to resolve their disputes concerning entry of a proposed protective order. [Dkts. 103, 114]. The Parties agree that a protective order based on one of the Northern District of California's model protective orders should govern discovery but disagree as to which model protective order best fits the needs of the case. *Id.* In particular, Pharmavite expresses concern over whether and how to handle disclosure of highly confidential/trade secret information to experts who may be working on other cases adverse to Pharmavite's competitors. [Dkt. 114 at 4].

**The Base Model Protective Order**

At a high level, the initial dispute centers on whether the Protective Order in this case should be based on a model order which has more or fewer levels and provisions for confidentiality designations. The Court's website makes available to the public two different model orders for consideration: (1) the Model Stipulated Protective Order for Standard Litigation ("Tier 1 MPO"); and (2) the Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Tier 2 MPO"). *See* https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/model-protective-orders ("The protective orders on this page are court-approved model forms.") (last visited Apr. 14, 2026).

Defendant Pharmavite argues that the Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Tier-2 MPO") should serve as the base protective order model in this case, because Plaintiffs seek discovery of "highly sensitive confidential information and trade secrets." [Dkt. 114 at 3]. Plaintiff, on the other hand, proposes using the less restrictive Model Stipulated Protective Order for Standard Litigation ("Tier-1 MPO"), because "the parties here are neither competitors nor is this a patent case, [thus] the still-robust confidentiality provisions found in the standard litigation protective order will suffice." *Id.* at 2.

3

United States District Court
Northern District of California

The Court may, for good cause shown, "protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense" by issuing a protective order which "specif[ies] terms" for how discovery shall occur. Fed. R. Civ. P. 26(c)(1). The Court's Tier 1 MPO is offered for consideration to use in "standard cases" or "standard litigation." By contrast, the Court's Tier 2 MPO contains "presumptively reasonable conditions" for a Protective Order to be used in a case involving discovery of highly sensitive materials. *Corley v. Google, Inc.*, No. 16-cv-00473-LHK (HRL), 2016 WL 3421402, at *1 (N.D. Cal. June 22, 2016) (quoting *Barnes & Noble, Inc. v. LSI Corp.*, No. 11-cv-02709-LB, 2012 WL 601806, at *1 (N.D. Cal. Feb. 23, 2012)).

Summarizing at a general level, Plaintiff in this consumer class action alleges that heart-healthy statements on bottles of Nature Made Fish Oil sold by Defendants are "false and misleading because the supplements do not benefit heart health and, in fact, may harm it." [Dkt. 114 at 1]. While the Court expresses no opinions on the merits of this dispute, the Parties' pleadings and filings discuss the issues to be litigated and indicate that several issues involving proprietary information are likely to be the subject of discovery. For example, Pharmavite avers that "Plaintiff has demanded, among other things, all documents relating to the proprietary formulations and recipes of Pharmavite's supplements, its proprietary sourcing information, its consumer and market research unique to Nature Made® products, its proprietary price setting processes, and more." *Id.* at 4. Pharmavite avers that these materials consist of "highly sensitive confidential information and trade secrets." *Id.* at 3.

Plaintiff's argument that the Tier 2 MPO is somehow applicable only for patent litigation is facially wrong. [Dkt. 114 at 2]. The title of the Tier 2 MPO states expressly that it can be used for "Litigation Involving Patents, *Highly Sensitive Confidential Information* and/*or Trade Secrets*." *See* https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/model-protective-orders (emphasis added). There is nothing in the Tier 2 MPO or the Local Rules which limits adoption of the Tier 2 MPO only to certain types of intellectual property cases. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 251404, at *11 (N.D. Cal. Jan. 23, 2024). Indeed, except for patent cases, the local rules contemplate that "counsel may stipulate to or move for another form or protective order" and thus grants flexibility in the form of protective order to be

4

entered, because each case is unique and may require provisions specific for the needs of that case. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8281690, at *3 (N.D. Cal. Nov. 30, 2023). Here, Defendant has demonstrated that the scope of discovery is likely to encompass highly confidential information (if not trade secrets) and thus supports the use of the Tier 2 MPO, regardless of whether or not this case is a patent lawsuit.

In light of the pleadings, the issues which are reasonably anticipated to be litigated, and the likely scope and types of discovery in this case, the Court finds the Tier 2 MPO to be the most appropriate model protective order. Accordingly, the Court **ORDERS** that the Tier 2 MPO shall be used as the base model protective order in this action.

**Disclosure of Protected Information to Experts**

Based on the Parties' briefing, the next dispute relates to whether and how to handle disclosure of highly confidential/trade secret information to experts who may be working on other cases adverse to competitors of the defendant. Pharmavite is concerned about inadvertent disclosure of its highly confidential/trade secret information in the context of those other litigations. [Dkt. 114 at 4].

To be clear, the dispute here is not whether or not a particular Plaintiff's expert may be working on other cases adverse to Pharmavite for different plaintiffs. Nor does the dispute here concern whether a particular Plaintiff's expert may be working on other cases on behalf of Pharmavite's competitors. The dispute stems from the alleged risk that a Plaintiff's expert here may work on other cases for Plaintiff (or some other plaintiff) *against* Pharmavite's competitors. The concerns raised here all relate to whether or not that expert witness would somehow be conflicted out or barred from working on these other cases (or this case).

The issue of whether or not a particular expert would be disqualified from working on this case (or any potential future cases) is neither ripe nor properly presented to the Court. Plaintiff expresses concerns that Defendant would somehow attempt to "veto" any Plaintiff's expert who happens to be working on other cases against competitors. Defendant appears to be take the position that such an expert witness should, in fact, be disqualified from working on this case (or at least be disqualified from accessing Defendant's highly confidential information). Whether an expert

should be disqualified or not depends on all the facts relevant to that expert.  Asking the Court to change the Tier 2 MPO to somehow forbid disclosure of highly confidential information to a range of potential experts at the outset is premature and reverses the normal flow of procedures under the model protective order.  Specifically, under the Tier-2 MPO, the burden of persuasion here is on the party objecting to the disclosure of the highly confidential information to that expert, which should be raised at the appropriate time with all the facts relevant to that expert presented to the Court in the context of this case.

The Court notes that experts are expected to abide by protective orders to which they commit to abide, and it is well-established that "disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d, 1087, 1092 (N.D. Cal. Aug. 10, 2024). Under the Tier-2 MPO, any expert given access to confidential or highly confidential material is required to sign the Acknowledgment and Agreement to be Bound, attached as Exhibit A. *See* Tier-2 MPO at 9-10. The Acknowledgment and Agreement to be Bound explicitly states:

> I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

*Id.* at 20.

Thus, under the Tier 2 MPO, in order to access any confidential or highly confidential information, an expert must agree to be bound by the protective order, risking punishment to both the expert and any counsel or Party involved if the Protective Order is violated.  Pharmavite argues without any support other than speculation that experts who happen to be working on other cases adverse to other Pharmavite competitors should somehow be conclusively presumed not to be able or willing to abide by their commitments to this Court.  The requirement that all persons (including experts) who receive confidential/highly confidential information are to be bound by the protective order and are subject to the discipline of this Court for both intentional and unintentional violations (or threatened violations) of the protective order is a matter which this Court expects counsel and

United States District Court
Northern District of California

experts to take seriously. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2015 WL 3863249, at \*4-5, \*7 (N.D. Cal. June 19, 2015) (affirming magistrate judge imposition of sanctions for violations of the protective order including awarding over $2 million in fees and costs and finding waiver of attorney-client privilege by party which violated protective order).  For these reasons, the Court **DENIES** Pharmavite's proposed edits to the Tier 2 MPO which would bar disclosure of highly confidential information to any expert unless that expert certifies that they are not working or consulting "for or against a competitor of a party." [Dkt. 114 at 2] (emphasis removed).  If and when Pharmavite has an objection to a specific Plaintiff's expert receiving highly confidential information, the Tier 2 Model Protective Order (and this Court's Standing Discovery Order) set forth the procedures the Parties are to follow for resolving any such dispute and presenting the specific facts regarding that dispute to the Court if the Parties are unable to resolve by negotiation.

As discussed above, the Parties have filed additional, individual Letter Briefs regarding an expert witness who is apparently coordinating with Pharmavite and a third party (Nordic Naturals), where that third party is involved in separate pending litigation.  [Dkts. 115, 116].  Those letter briefs do not comply with the Court's Standing Discovery Order and therefore will not be considered.  In any event, even if considered, the discussion in those letter briefs are not persuasive or dispositive of the issues resolved by this Order.

**May 4, 2026 Joint Discovery Letter Brief**

As summarized above, on May 4, 2026 the Parties filed a separate Discovery Letter Brief regarding disputes over Defendant's production of documents, custodians, the relevant time period for ESI collection, and search terms.  [Dkt. 118].  A significant portion of that Discovery Letter Brief is devoted to the dispute regarding the entry of a Protective Oder resolved by this Order.  *Id.* at 2, 4-5.  In the May 4 Discovery Letter Brief, Pharmavite indicates that there is agreement over relevant time period and that the Parties have had ongoing communications over search terms.  *Id.* at 5-6.  Further, this Discovery Letter Brief does not comply with Section H.2 of the Court's Standing Discovery Order because it is lacking the certification of lead trial counsel of their meet and confer on the disputes therein.  Indeed, Pharmavite avers that the Parties did not fully meet and confer as required.  *Id.* at 1.

United States District Court
Northern District of California

Because this Order resolves the entry of the Protective Order in this case, it is unclear how the other disputes in that May 4 Discovery Letter Brief are impacted. Also, as noted, there is evident confusion over whether all the disputes therein are actually ripe. And it appears that lead trial counsel have not complied with their obligations to the Court under Section H.2 of the Standing Discovery Order.

For these reasons, the Court **DENIES WITHOUT PREJUDICE** this most recent May 4 Discovery Letter Brief [Dkt. 118]. Lead trial counsel for the Parties are **ORDERED** to meet and confer either in person or by videoconference, as required by Section H.2 of the Standing Discovery Order, to negotiate in good faith and attempt to achieve reasonable resolution of the disputes discussed in this Discovery Letter Brief. That meet and confer is to be conducted by lead trial counsel only and no other counsel or person is to participate. That meet and confer of lead trial counsel is to be completed by June 5, 2026.

The Parties are **ORDERED** to file a Further Joint Discovery Letter Brief, limited to four pages (evenly divided between the Parties), to report on the narrowing or resolution of the disputes raised in this most recent Discovery Letter Brief [Dkt. 118]. That Further Discovery Letter brief **SHALL** include the requisite certification of lead trial counsel and shall present to the Court the Parties' respective positions on any disputes that remain unresolved. The Further Joint Discovery Letter Brief **SHALL** be filed on June 9, 2026.

The Court notes that the disputes raised in this most recent May 4 Discovery Letter Brief are on issues which the Court expects experienced attorneys to be able to resolve through negotiation without the need for Court intervention. For example, the fact that the Protective Order has not yet been entered could have been resolved by a fairly standard agreement among counsel to temporarily abide by one of the Model Protective Orders (or simply agree that all produced documents would be treated as "outside counsel only") in the interim until the formal Protective Order is entered – this is the type of normal approach to responsible, economical litigation that the Court would have expected of the able, seasoned lawyers working on this case  particularly in light of their obligations under Fed. R. Civ. P. 1 and 26.

If, after receiving the Further Joint Discovery Letter Brief, the Court determines that the

Parties (including lead trial counsel) have failed to reasonably meet and confer within both the letter and spirit of the Court's Standing Discovery Order (which incorporates by reference the Court's Guidelines for Professional Conduct), the Court may consider imposing further obligations on the Parties, including but not limited to requiring meet and confer in-person in Courtroom F of the San Francisco Courthouse by lead trial counsel and/or requiring the clients of each Party to attend the meet and confers in person as well.  The Court may also consider requiring the Parties to appear in-person for monthly Discovery Management Conferences, if counsel continue to demonstrate a failure to reasonably compromise discovery disputes.

### CONCLUSION

Accordingly, for all the reasons discussed herein, the Court **ORDERS** the Parties to use the Tier 2 Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets in this case. The Court **DENIES** Defendant Pharmavite's proposed edits to the MPO which would broadly bar disclosure of highly confidential information to experts consulting against a competitor of Pharmavite.

Within three (3) business days of the date of this Order, the Parties are **ORDERED** to file a Joint Proposed Protective Order (using the Tier 2 MPO) with mutually agreeable edits (such as to the case name and docket number, and any other mutually agreeable edits) consistent with this Order for the Court's execution.

For the reasons discussed herein, the Court **DENIES** the Discovery Letter Brief filed on May 4, 2026 [Dkt. 118] and **ORDERS** the Parties to comply with the directives herein regarding further meet and confer and updating the Court on any remaining disputes raised therein.

This **RESOLVES** Dkts. 103, 114, 115, 116, and 118.

**IT IS SO ORDERED.**

Dated: May 28, 2026

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California